UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VERNA FELTON                                                                                              PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:14CV411 DPJ-FKB

LEAKE COUNTY SCHOOL DISTRICT,
and PATRICK POSEY, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY AS SUPERINTENDENT OF THE
LEAKE COUNTY SCHOOL DISTRICT                                                          DEFENDANTS

ORDER

This employment dispute is before the Court on Defendants' amended motion for partial dismissal or, in the alternative, for partial summary judgment [38]. Plaintiff Verna Felton has responded in opposition [59]. For the reasons that follow, Defendants' motion is granted.

I.     Background

Verna Felton, the former principal of the Leake Central Junior High School, filed this suit against the Leake County School District ("LCSD") and its Superintendent, Patrick Posey, asserting various claims stemming from her suspension and termination. Her allegations include discrimination based on "her race and sex in violation of Title VII and Section 1981," intentional infliction of emotional distress, libel, slander, defamation, tortious interference with contract, invasion of privacy, and unlawful discharge. First Am. Compl. ("FAC") [33] ¶ 50.

Beginning in 2012, Felton became principal at Leake Central Junior High. In February 2013, the LCSD and Superintendent Posey recommended renewal of her contract for the 2013-2014 school year. But on February 18, 2013, Defendants suspended Felton's employment based on complaints of bullying, intimidation, and threatening behavior resulting in a "hostile work

environment in violation of the Mississippi Educator Code of Ethics." First Am. Compl. ("FAC") [33] ¶ 29. Defendants later terminated Felton's employment on March 6, 2013.

Felton requested and received a hearing in accordance with Mississippi Code Section 37-9-59. The hearing lasted four days, during which Felton, with the assistance of two attorneys, put forth evidence challenging the employment decision through witness testimony and exhibits. Defs.' Mem. [39] at 2–4; Defs.' Reply [61] at 7; Pl.'s Mem. [60] at 27. The Board of Education for the LCSD, after reviewing the hearing record and allowing Felton and her attorney to address the Board, voted to uphold the termination. Chancery Ct. Rec. [38-1] at 13. The Board explained that Felton was being terminated "due to her insubordination, neglect of duty and deficiency in meeting professional responsibilities; failure to follow the policies of the Leake County Board of Education; her refusal to comply with reasonable directives of the Superintendent; incompetence and failure to implement the instructional needs of Leake Central Junior High School." *Id.* Felton filed a notice of appeal with the Chancery Court of Leake County, but neglected to post an appeal bond, so the appeal was dismissed for lack of jurisdiction. *Id.* at 32.

After exhausting her administrative remedies under Title VII, Felton filed the present suit. The matter is now before the Court on Defendants' motion to dismiss, or alternatively, for summary judgment, in which Defendants generally contend that all claims, other than those under Title VII, are preempted by the school board's decision. The motion is fully briefed, personal and subject-matter jurisdiction exist, and the Court is prepared to rule.

II.     Applicable Standards

In their motion, Defendants invoke both Rule 12(b)(6) and Rule 56 while offering record evidence. Plaintiff likewise relies heavily on materials outside the record. *See, e.g.*, Pl.'s Resp. [59] ¶ 11. Under Rule 12(d), the Court must convert a Rule 12(b)(6) motion into a Rule 56 motion if it considers "matters outside the pleadings." Fed. R. Civ. P. 12(d). "Rule 12(d) gives a district court 'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'" *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1366 (1969); *Ware v. Assoc. Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th Cir. 1980)). Here, the Court has considered the parties' exhibits, so Rule 56 applies.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Finally, it should be mentioned that both parties failed to fully comply with Rule 56(c)(1), which states that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to *particular* parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).  Rule 56(c)(3) adds that "[t]he court need consider only the cited materials, but it may consider other materials in the record."  And under Rule 56(e), "[i]f a party fails to properly support an assertion of fact . . . , the court may: . . . (2) consider the fact undisputed for purposes of the motion."  Though the Court made every effort to consider the record as a whole, to the extent something was missed there was no "duty to sift through the record in search of evidence." *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010).

III.     Analysis

Defendants make the following three arguments in their motion: (1) all of Plaintiff's claims—except for her Title VII claims—are barred by res judicata and/or collateral estopptel; (2) Plaintiff's remaining claims against Defendant Posey in his individual capacity are inappropriate; and (3) Plaintiff cannot recover punitive damages against a government agency. Each will be addressed in turn.

A.     Res Judicata

Defendants argue that the LCSD Board of Education's decision is an adjudication entitled to preclusive weight.  Therefore, they contend that all of Plaintiff's claims, except her Title VII claim, are due to be dismissed based on the doctrines of res judicata and collateral estoppel. Because res judicata applies, the Court will not address collateral estoppel.

Generally speaking, res judicata precludes a party "from relitigating claims that were or could have been raised in a prior action." *Cook v. Bd. of Sup'rs of Lowndes Cnty.*, 806 F. Supp. 610, 615 (N.D. Miss. 1992).  Here, the "prior suit" is actually an administrative determination from the LCSD Board of Education.  But there can be no serious dispute that an administrative ruling from a state agency can carry preclusive effect.

According to the United States Supreme Court, when a state agency resolves disputed issues of fact, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) (affirming dismissal of § 1983 discrimination claims).  And the Fifth Circuit Court of Appeals has determined that a termination hearing conducted by a school board qualifies as a decision by a state administrative agency for res judicata purposes.  *See Miller v. Pascagoula Mun. Sep. Sch.*

*Sys.*, 263 F.3d 162, at *1 (5th Cir. 2001) (per curiam) (citing *Levitt v. UTEP*, 847 F.2d 221, 227 (5th Cir. 1988)).  Such a hearing occurred in this case pursuant to the procedures provided in Mississippi Code Section 37-9-111.

        1.        Plaintiff's Threshold Arguments

Even assuming a school-board decision can carry preclusive effect, Felton raises three threshold arguments.  First, she contends that res judicata cannot apply because she did not appeal the school-board decision pursuant to section 37-9-113.  But this argument runs counter to *Elliott*, in which the Supreme Court held that the agency determination had preclusive effect, despite the employee's failure to "seek review of [the] administrative proceedings in the [state] courts."  478 U.S. at 792; *see also Ellis v. Tupelo Pub. Sch. Dist.*, Civil Action No. 1:12-CV-234-SA-DAS, 2014 WL 1285947, at *4 (N.D. Miss. Mar. 31, 2014) (applying res judicata where the employee failed to appeal the school-board decision).

Second, Felton generally states that she "has not had an ***adequate opportunity*** to litigate her claims against the Defendants LCSD and Posey."  Pl.'s Mem. [60] at 18 (emphasis in original).  But Felton neither elaborates on that point nor cites *any* record evidence to support it. *See Jackson*, 602 F.3d at 379–80 (holding that court is not required to search the record when party fails to cite it).  Instead, the record shows that Felton was represented by two attorneys during the four-day hearing and was allowed to testify (twice) and present witnesses and exhibits. *See generally* Hearing Trans. [38-2].  Though there are discrete issues she says the hearing did not cover, those complaints are addressed later.  For now, the argument that she generally lacked an "adequate opportunity" to litigate her suspension and termination is not supported.

Felton's third general argument attacks the LCSD decision from a different angle. After her discharge, Felton applied for and received unemployment benefits through the Mississippi Department of Employment Security ("MDES") (formerly the Mississippi Employment Security Commission, "MESC"). In response to Defendants' motion, Felton insists that the MDES ruling is entitled to preclusive effect and essentially trumps the LCSD's decision.

Though Felton cites no relevant authority to support her argument, she does raise an interesting question with respect to the dueling administrative decisions. *Assuming* both decisions would carry preclusive effect, it is unclear how the Court would handle them. Does the first (LCSD) take precedent; does the second (MDES) trump the first; is it a wash; or is the Court to somehow give preclusive effect to two inconsistent decisions?[1]

Fortunately, there is no need to answer those difficult questions because the Court finds that Mississippi would not give preclusive effect to the MDES decision, which applied a completely different legal standard. As Defendants observe, a Mississippi employee is ineligible for unemployment benefits if terminated for "misconduct." Miss. Code Ann. § 71-5-513(A)(1)(b). Significantly, "[t]he employer has the burden of showing misconduct by 'substantial, clear, and convincing evidence'. . . ." *Foster v. Miss. Emp't Sec. Com'n*, 632 So. 2d 926, 927 (Miss. 1994) (citations omitted); *see also* Miss. Code Ann. § 71-5-513(A)(1)(c).

---

[1]This begs the question whether the subsequent MDES decision may have been precluded by the LCSD's prior decision—assuming both otherwise satisfy the res judicata requirements. *Cf.*, *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist. of Neshoba Cnty.*, 437 So. 2d 388, 392 n.4 (Miss. 1983) (holding that non-renewal decision did not carry preclusive weight in subsequent MDES hearing and distinguishing non-renewal from termination decisions).

The burdens for Felton's claims in this case could not be more different.  Felton, not Defendants, now carries the burden of proof as to all of her claims by a preponderance of the evidence.  With respect to the § 1981 claim brought through § 1983, the only burden Defendants face is the burden at the summary-judgment stage to articulate a reasonable, non-discriminatory reason for the decision; this is a burden of production, not persuasion.  *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).

The United States District Court for the Northern District of Mississippi addressed this very point in *Schuh v. Town of Plantersville, Mississippi*, Civil Action No. 1:13CV101-SA-DAS, 2014 WL 4199271, at *4 (N.D. Miss. Aug. 22, 2014).  There, as here, the plaintiff attempted to offensively use a favorable MDES ruling to establish his § 1981 claims.  The court refused to give the MDES's ruling preclusive effect because the burdens were different.  *Id*. at *3 (noting that Mississippi refuses to apply collateral estoppel or res judicata between criminal and civil cases due to differing legal burdens (citing *Sanders v. State of Miss.*, 429 So. 2d 245, 251 (Miss. 1983)).

The same court also faced this issue in *Finnie v. Lee County, Mississippi*, where again the former employee attempted to offensively use a favorable MDES result.  907 F.Supp.2d 750, 792 (N.D. Miss. 2012).  Though the court found that neither collateral estoppel nor res judicata applied to the facts, it nevertheless noted in dicta that the differing burdens would have otherwise prevented claim or issue preclusion.  *Id*. (citing Rest. 2d Judg. § 28(4) (stating that relitigation is not precluded when "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action"); Rest. 2d Judg. § 28(4), cmt. f ("To apply issue preclusion in the cases described in Subsection (4)

would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden be[en] imposed . . . since the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden, preclusive effect is properly denied.")).

This Court agrees that Mississippi would not give preclusive effect to the MDES determination because the standards are incompatible with Felton's claims in the present case. The finding that LCSD failed to prove misconduct by clear evidence at the MDES hearing does not mean Felton has met her burden of proving by a preponderance of the evidence that Defendants wrongfully terminated her employment. Therefore, the MDES decision does not "trump" the school board's finding.

        2.        Application of Res Judicata Standards

So, the question is whether the LCSD Board of Education's decision meets the res judicata requirements. "To determine the preclusive effect of a state-court judgment in a federal action, 'federal courts must apply the law of the state from which the judgment emerged.'" *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (quoting *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096–97 (5th Cir. 1995)). And under Mississippi law, res judicata requires four identities: (1) identity of the subject matter; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or character of a person against whom a claim is made. *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (Miss. 2009).

        a.        Subject Matter and Cause of Action

The identity of the subject matter is referred to as the "substance" of the lawsuit, *Black*, 461 F.3d at 589, or "the underlying issue before the court, not the legal basis for recovery." *Id.* at

591.  In contrast, the identity of the cause of action is the "group of operative facts" that form the basis for the claim.  *Id*. at 589.  In *Black*, the Fifth Circuit noted that courts reviewing these "distinct but related" identities "look past the legal bases asserted and rely more on the factual and transactional relationship between the original action and the subsequent action."  *Id*. (punctuation altered, citation omitted).  These identities are met.

When addressing the dentity of subject matter, Felton offers the following argument: "First, the subject matter pertains to the suspension, and facts surrounding the suspension in February 2013 and the actions of the defendants in, *inter alia*, defaming Plaintiff Felton; and engaging in depriving her of her federal constitutional rights under Section 1983."  Pl.'s Mem. [60] at 25 (generally citing FAC [33]).  Her only other argument relates to the MDES decision.

Felton's vague argument in this section is a bit difficult to digest.  For example, she fails to explain which § 1983 claims constitute a subject matter distinct from those at the hearing.  Section 1983 would provide remedy for any number of the constitutional and federal statutory claims she has pleaded, including the § 1981 race claim.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989) (holding that § 1983 provides remedy for § 1981 violations).  Similarly, her reference to a defamation claim does not indicate which conduct formed the basis of the alleged defamation, and she cites no supporting record evidence.  Is the claim based on the fact that she was suspended and then terminated, or was it something else?  Moreover, she qualifies that statement by adding "*inter alia*," which makes it impossible to know which claims she thinks lack subject-matter identity.

Looking then to her overall briefing, the Court will attempt to examine the different counts from her FAC, as argued in her brief, and then determine whether they share the subject-

matter and cause-of-action identities. In that light, the Court will examine (1) the race- and sex-based discrimination claims; (2) the claims related to the propriety of her suspension; (3) the procedural-due-process claims related to the suspension and termination; (4) the substantive-due process claims related to the suspension and termination; and (5) the state-law claims.

i.       Race and Sex Claims

Felton's employment was suspended and then terminated pursuant to Mississippi Code Section 37-9-59. Chancery Ct. Rec. [38-1] at 16. That section provides that a Superintendent may suspend or dismiss a licensed employee of the school district "[f]or incompetence, neglect of duty, immoral conduct, intemperance, . . . or other good cause." Miss. Code Ann. § 37-9-59. Felton challenges the LCSD's finding in Count I of her FAC, alleging that she "was discriminated on the basis of her sex and race . . . when she was suspended, and later terminated by the Defendants, LCSD and Posey in violation of Title VII and Section 1981." FAC [33] at ¶¶ 50, 52.[2]

Starting with the racial component of her claim, her attorneys pursued this theory during the hearing. *See, e.g.*, Hearing Trans. [38-5] at 37–41 (eliciting testimony that Posey exhibited "racial overtones," would not meet with a witness "because [he] was a black man," and "didn't have no problems getting rid of his black teachers" but would "step in" if a white teacher was involved).

---

[2]The Court assumes Felton was not suggesting a sex-based-discrimination claim under 42 U.S.C. § 1981. *See Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 345 (5th Cir. 1981) ("In the face of seemingly unambiguous statutory language, emphatic contemporaneous statements by legislators and an unbroken tide of case law rejecting Bobo's arguments, we conclude that the district court properly held that sex discrimination is not cognizable under § 1981.").

Despite this testimony, the LCSD's final decision cataloged a series of violations; confirmed that Felton had been insubordinate to the superintendent; and further found that she had "bullied, intimidated, threatened, and harassed the staff of Leake Central Junior High School all of which while creating a hostile working environment for the staff of Leake Central Junior High School." Chancery Ct. Rec. [38-1] at 15. It then concluded "that this decision was *a proper employment decision* and *not contrary to law*." *Id.* at 16 (emphasis added).

When Felton initially appealed this finding, her notice of appeal to the Chancery Court reinforced the racial component of claim, stating: "The decision to terminate the Plaintiff was arbitrary and capricious in that the decision was based upon her race—an unlawful criterion . . . ." *Id.* at 5. Thus the race claim found in Count I arises from the same facts and relates to the same substance as the claim pursued before the school board. *See* FAC [33] at ¶ 52.

Despite this overlap, Felton now argues that she did not bring a § 1983 claim in the prior hearing. Pl.'s Mem. [60] at 26. True, but the focus is on "the underlying issue before the court, not the legal basis for recovery." *Black*, 461 F.3d at 591. The underlying issues are the same.

Finally, as to the sex-based discrimination claim reflected in the FAC, it appears to have been an afterthought. Felton makes no reference to the claim in her response, and it does not appear to have been mentioned during the hearing. Regardless, the hearing officer allowed Felton to elicit testimony suggesting that her suspension and termination were motivated by race, and there is no indication that similar sex-based theories would have been precluded. "[R]es judicata bars all claims that were brought *or* could have been brought based on the operative factual nucleus." *Ellis v. AMEX Life Ins., Co.*, 211 F.3d 935, 938 n.1 (5th Cir. 2000) (emphasis

in original). The race- and sex-based discrimination claims share subject-matter and cause-of-action identity with the present case.

ii. The Propriety of the Suspension

Whether the suspension was an issue before the LCSD is one of Felton's major contentions. According to her, there can be no res judicata as to any claims related to the suspension, because those claims were never heard. Though Felton repeatedly makes this observation in her memorandum, she never cites any record evidence to support it. *See, e.g.*, Pl.'s Mem. [60] at 2, 27 (citing FAC). Unfortunately, Defendants' submissions were equally lacking on this point, often referring to the entire hearing transcript.

Though the Court is under no duty to review record evidence that has not been cited, the Court nevertheless examined the record as a whole, including the 1,213-page hearing transcript. Having done so, there is little doubt that the propriety of the suspension was thoroughly explored. To begin with, Felton's counsel documented this issue in a pre-hearing letter to Posey in which she wrote that the "reasons for suspending Mrs. Felton do not coincide with those allowed under school policy." FAC, Ex. 1 [33-1] at 3. That letter was introduced into evidence and discussed during the hearing. Hearing Tr. [38-2] at 186-88.

The hearing testimony likewise addressed the issue. For example, Felton testified that nothing happened "that merited a suspension " and that she received no prior warnings. Hearing Tr. [38-2] at 108. Her attorneys also challenged the propriety of the suspension by frequently asking witnesses to state whether or not certain alleged conduct came to light before or after the suspension decision. *See, e.g.*, *id*. at 202; Hearing Tr. [38-3] at 61, 75, 212, 249; Hearing Tr. [38-4] at 28, 31, 256–58. Counsel continued the theme by cross examining a witness about the

basis for the suspension. *See* Hearing Tr. [38-4] at 248–53.  Finally, counsel asked one witness, "Do you think that Ms. Felton should have been      suspended . . . ." Hearing Tr. [38-3] at 251. Though the hearing officer sustained an objection to that question, he did so because "it[] call[ed] for a legal conclusion and it's not her decision to make." *Id*. at 252.  There is no suggestion that the hearing officer or the parties considered the issue itself to be beyond the scope of the hearing, in fact it appears that they thought it was relevant. *Id*.

Of course Defendants note that the reasons for suspension were essentially the same as those for the termination, so when the LCSD determined that valid grounds existed to terminate Felton's employment under section 37-9-59, it likewise provided a preclusive factual finding that the suspension was justified.  In any event, this issue was heard before, and to the extent any portion of it was not better presented, it could have been. *See Ellis*, 211 F.3d at 938 n.1.  The identities of subject matter and cause of action are present for these claims.

iii.     Procedural-Due-Process Claims

Count II of the FAC, which invokes procedural due process, likewise shares these identities.[3]  Felton states in her responsive memorandum that she was not provided notice or "her statutory hearing mandated by section 37-9-59." Pl.'s Mem. [60] at 7, 10.  For the most part, she focuses on the procedure as it related to the suspension.

---

[3]Count II is a mishmash of legal jargon that seems to invoke a variety of different claims without citing the specific constitutional or statutory provisions upon which it is based. *Cf.*, Fed. R. Civ. P. 10(b).  Among other things, Count II alleges that Felton's "rights [were] violated by her suspension without being provided the statutory hearing on the suspension . . . ." FAC [33] ¶ 58.  The other constitutional, statutory, and state-law claims that might be inferred from this count appear in other counts as well, so the Court now focuses on procedural due process.

Again, Felton raised this issue before and during the hearing. First, her counsel's letter notified Posey that the suspension letter "violated her right to due process pursuant to the district's procedures by: (a) failing to properly notify her of the specific nature of the alleged 'serious formal complaints' against her and (b) failing to advise her of her right to a public hearing on said charges," FAC, Ex. 1 [33-1] at 3, the exact issue she now pursues. And that letter was introduced and discussed during the hearing. Hearing Tr. [38-2] at 186-88.

Looking then to the hearing transcript, numerous witnesses were examined regarding the process Felton received before she was suspended. For example, Posey was extensively cross examined about why he suspended Felton before hearing her side. Hearing Tr. [38-4] at 32–49. Felton herself characterized the termination letter as "a notice of termination without due process." Hearing T. [38-2] at 21. And other witnesses were asked similar questions regarding the process leading to the suspension. *See, e.g.*, *id*. at 135 ("Would it shock you if you were suspended [with] pay before you know what [grievance] was?"). Indeed substantial time was spent addressing the steps that should have been taken. *See, e.g.*, *id*. at 136, 318–338.

Had the LCSD concluded that Felton did not receive the process she was due, it could have fashioned an appropriate remedy. Instead, it concluded that "this decision was a proper employment decision and not contrary to law." Chancery Ct. Rec. [38-1] at 16. The due-process claims alleged in Plaintiff's federal-court complaint were adequately explored during the hearing—or could have been—so the first two identities are again satisfied. *See Ellis*, 211 F.3d at 938 n.1.

15

                iv.       Substantive-Due Process Claims

Felton's substantive-due-process claim primarily appears in Count XI of the FAC, where she contends that the employment decisions were arbitrary and capricious. FAC [33] ¶¶ 94, 95. During the hearing, the facts underlying Felton's suspension and termination were explored in great detail, including allegations that she allowed a student to access a school-owned laptop to download graphic music for him to play—for compensation—at a school dance, refused to cooperate with a School Improvement Team from the State Department of Education, and bullied, intimidated, threatened, and harassed school staff members. Chancery Ct. Rec. [38-1]. Felton's two attorneys spent considerable time exploring these and other allegations over the four day hearing. *See, e.g.*, Hearing T. [38-5] at 49–56 (testimony by Felton regarding allegations of misuse of laptop and inappropriate music); *id.* at 78–84 (testimony by Felton regarding working with the State Department of Education). Yet the LCSD found "that this decision was a proper employment decision and not contrary to law." Chancery Ct. R. [38-1] at 16. Again, the first two identities are present.

                v.       State-Law Claims

Finally, the same is true for Felton's state-law claims. Sprinkled throughout the FAC, Felton mentions intentional infliction of emotional distress, libel, slander, defamation, tortious interference with contract, tortious breach of contract, bad faith, invasion of privacy, and unlawful discharge.[4] Felton's response fails to specifically address the factual grounds for these

---

[4]Most of these claims appear in Count III, but are then repeated in Counts IV through VIII. Count IX alleges that Defendants "tortuously [sic] interfered [with] Plaintiff Felton's contract," and tortiously breached that contract with gross negligence. Count XI deals with bad-faith breach of contract.

claims, and she has not shown how they emanate from anything other than the suspension and termination decisions that were pursued—or could have been pursued—before the school board. *See Jones v. McCullum*, Civ. Action No. 5:10CV98 DCB-MTP, 2013 WL 5563787, at *6 (S.D. Miss. Oct. 7, 2013) (dismissing state-law claims of dismissed university employee based on res judicata). The first two identities are present.[5]

In short, the subject matter of both the hearing and this suit is Felton's suspension and ultimate discharge, and the cause of action is the truth or falsity of the allegations supporting those decisions. The final analysis provided by Judge Aycock in *Ellis*, equally applies here.

> [T]he substance or general characterization of the underlying action was the propriety and lawfulness of [the plaintiff's] termination. Specifically, the Board had to consider whether there existed valid cause to terminate the contract and whether the decision constituted "a proper employment decision." That same characterization applies with equal force to [the plaintiff's] federal suit, and the Court thus finds the identity of subject matter present.
> As to the causes of action, . . . [the plaintiff] again seeks to contest the veracity of the District's allegations and then challenges the purported procedural inadequacies leading up to his termination hearing. Accordingly, the Court finds that identity in the causes of action to be present as well.

2014 WL 1285947, at *7 (quoting Miss. Code Ann. § 37-9-111).

    2.  Parties and Quality of Parties

"Mississippi follows the general rule that parties must be substantially identical for res judicata to apply." *EMC Mortg. Corp.*, 17 So. 3d at 1091. It is undisputed that LCSD was a party to the school-board hearing, but as Plaintiff observes, Posey was not. The point matters

---

[5] The same rationale applies to Felton's dissatisfaction that LCSD disconnected her school-issued cell phone or school-provided internet access prior to termination, suspended her after just one complaint by a co-worker, and considered a co-worker's complaint, even though it was not filed as a grievance. All of these allegations relate to Felton's suspension and termination and could have been raised during the hearing.

not, because strict identity of the parties is not necessary. "A non-party defendant can assert res judicata so long as it is in 'privity' with a named defendant." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 236–37 (Miss. 2005) (internal quotations and citations omitted).

Here, Posey, as superintendent for the district, is in privity with LCSD, and Felton's allegations against him only concern his conduct as superintendent. *See Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x 172, 177 (5th Cir. 2010) (applying res judicata where the board's members were named individually as defendants, though only the board was named in the prior action); *Jones*, 2013 WL 5563787, at *4 (finding grievance committee's attorney was in privity with university, meeting third and fourth res judicata elements); *Gates v. Walker*, 865 F.Supp. 1222, 1239 (S.D. Miss. 1994) (finding superintendent was in privity with school district). Moreover, the Court notes that when Felton filed her notice of appeal of the school-board decision in Chancery Court, she named both LCSD and Posey as defendants—just as she did here. Chancery Ct. Rec. [38-1] at 3. While she did not perfect that appeal, Felton clearly contemplated that Posey was at least in privity with LCSD.

Felton does, however, seem to raise one additional issue in this regard when she argues that "Defendant Posey **threatened** to revoke the educator's certificate of Plaintiff Felton in June 2013 in the event the Board voted in her favor and against him." Pl.'s Mem. [60] at 30 (emphasis in original). Felton seems to be saying that because this part of the claim against Posey relates to something other than the suspension and termination, and because Posey was not a party to the hearing, there is no identity of parties as to this claim. Regardless, Felton has not factually supported the assertion, because she merely cites the FAC. *See* Pl.'s Mem. [60] at 30 (citing FAC [33] at 6–13). Still, the Court searched the record—including the 1,213 page

18

hearing transcript—to see if this alleged incident is somehow supported; it is not. To survive summary judgment, Felton must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted). She failed to do so, and this issue is not properly before the Court.

Accordingly, the Court finds that each claim addressed in the FAC—sans the Title VII claim—share the requisite identities with the issues that were raised, or could have been raised, before the LCSD. Accordingly, res judicata applies and the LCSD's decision will be given preclusive effect.

B.   Posey's Individual Liability

Defendants also move for dismissal of Felton's individual-capacity claims against Posey. Because the Court finds that res judicata bars all of Plaintiff's claims against Defendants, with the exception of Title VII, it is not necessary to address Posey's additional arguments. "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 388 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)). Accordingly, Posey is dismissed from this action.

C.   Punitive-Damages Claim

Defendants also move for dismissal of Plaintiff's punitive-damages claims. Plaintiff concedes that punitive damages are not available against a governmental entity under § 1981, but argues that Posey can be held individually liable under § 1983 and her state-law claims. Pl.'s Mem. [60] at 2. Again, because the Court finds that all claims—except Plaintiff's Title VII claim—are due to be dismissed based on res judicata, and that Plaintiff's Title VII claims against Posey are due to be dismissed, Plaintiff's argument with respect to Posey is not well-taken.

Moreover, as Defendants point out, punitive damages are not available under Title VII against the government, government agencies, and political subdivisions.  *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 466 (5th Cir. 2001).  Plaintiff has not responded to Defendants' Title VII argument, so the Court concludes it too has been conceded.  Accordingly, Plaintiff's punitive-damages claim under Title VII against LCSD is dismissed.

IV.     Conclusion

It is worth mentioning that the Court has not addressed every argument found in the memoranda because many were irrelevant, unsupported with record or legal citation, or otherwise meritless.  All were considered, but those not addressed would not have changed the outcome.

Based on the foregoing, the Court finds that Defendants' motion for partial dismissal should be granted.  All of Plaintiff's claims, with the exception of her Title VII claim against LCSD, are dismissed with prejudice.  In addition, Defendant Posey is dismissed from this action, and Plaintiff's claim for punitive damages under Title VII is dismissed.

**SO ORDERED** this the 7th day of September, 2015.

                                          s/ *Daniel P. Jordan III*
                                          UNITED STATES DISTRICT JUDGE